# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| **PEOPLE FIRST OF TENNESSEE**, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) No. 3:95-1227 |
| | ) |
| v. | ) JUDGE SHARP |
| | ) |
| **CLOVER BOTTOM DEVELOPMENTAL CENTER**, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM

Intervenor Parent Guardian Association of Clover Bottom Developmental Center ("PGA Clover Bottom") and Intervenor Parent Guardian Association of Greene Valley Developmental Center ("PGA Greene Valley") (collectively the "PGA" or the "Intervenors") filed an Application for Award of Attorneys' Fees and Reimbursement of Expenses (Docket Entry No. 1010) for monitoring and enforcement of activities from November 13, 2008 through June 30, 2010, to which Defendants, the State of Tennessee, *et al.* (the "State" or "Defendants") filed a response (Docket Entry No. 1020), and PGA filed a reply (Docket Entry No. 1035). Additionally, the State filed a surreply (Docket Entry No. 1045), to which PGA filed a surresponse (Docket Entry No. 1053). The Court has reviewed all the papers filed in support of, and in opposition to, PGA's application. For the reasons discussed herein, PGA's application will be granted.

## I. RELEVANT PROCEDURAL HISTORY

This case began in 1995, when Plaintiff, the United States, found that Defendants violated the civil rights of residents of three of the State's developmental centers: Nat. T. Winston Development Center in Bolivar, Clover Bottom Developmental Center ("Clover

1

Bottom") (which includes Harold Jordan Center ("Harold Jordon")) in Nashville and Greene Valley Developmental Center ("Green Valley"), in Greenville (collectively, the "Centers"). Based on the United States' findings, the United States and People First of Tennessee, *et al*. ("People First") filed separate civil actions against the State. This Court consolidated the actions. The State, People First, PGA, and the United States negotiated the Settlement Agreement (Docket Entry No. 43). After a fairness hearing, the Court conditionally approved the Settlement Agreement on July 3, 1997 (Docket Entry No. 167). On September 21, 1999, the Court granted the parties' motion to modify the Settlement Agreement to include additional provisions requested by PGA (Docket Entry No. 299), and on November 23, 1999, the Court unconditionally and finally approved the Settlement Agreement (Docket Entry No. 327). The Settlement Agreement, among other things, named PGA as a party and signatory to the agreement, which entitled it to enforce all provisions of the Agreement. (*Id.*).

In May 2000, PGA filed a motion for the award of attorneys' fees and costs. (Docket Entry No. 388). In a Memorandum and Order, entered March 4, 2004, the Court determined PGA – as Plaintiff-Intervenors – were prevailing parties entitled to attorneys' fees and costs. (Docket Entry Nos. 682-683). Subsequently, in 2005 through 2008, PGA and the State submitted four Joint Applications for awards of attorneys' fees and reimbursement of expenses, along with Agreed Orders, resolving those issues for various periods between March 11, 2004 and November 12, 2008. *See* (Docket Entry Nos. 735, 786, 821 and 885).

Unfortunately for all sides, the parties could not come to an agreement on the amount of attorneys' fees and costs for the period of November 13, 2008 through June 30, 2010. As such, the current dispute ensued.[1]

---

[1] The Court notes that the parties attended a day-long mediation session with Magistrate Judge Brown, wherein this issued was discussed. Magistrate Judge Brown noted, "[i]t appears that there may be, at the present time, an

## II. ANALYSIS

### A. Prevailing Party Entitled to Attorneys' Fees and Costs

In the March 4, 2004, Memorandum and Order of the Court, Judge Echols found that PGA was a "prevailing party entitled to an award of fees and costs." In support of his finding, Judge Echols stated:

> The Intervenors' efforts have not duplicated efforts of Plaintiffs, because the intervening parents and guardians seek to protect the rights of some whose interests were different than the original Plaintiffs. They have also raised concerns about the class members that differ from Plaintiffs…[i]n doing so, the Intervenors have also demonstrated that their efforts are directly related to upholding the civil rights of the class members at issue in this case…[these] accomplishments…show that they have had significant successes apart from Plaintiffs, and an award of fees [and costs] to the Intervenors is appropriate.

(Docket Entry No. 682 at 8 and 10).

Pursuant to the Court's Memorandum and Order, PGA now moves this Court for an award of attorneys' fees and reimbursement of expenses for monitoring and enforcement activities from November 13, 2008 through June 30, 2010. (Docket Entry No. 1011 at 1). PGA asserts it is entitled to recover attorneys' fees because it has demonstrated that it was a prevailing party in its post-judgment activities; and subsequently, in every Joint Application between 2005 and 2008, the State represented to the Court:

- that the PGA are "prevailing parties" entitled to awards of reasonable attorneys' fees and expenses in this case;
- that the State has agreed the PGA shall be entitled to submit periodic requests for reasonable fees and expenses, with the State reserving the right to object to the reasonableness of any such fees and expenses; and
- that the Court should award the PGA attorneys' fees and expenses for the specified periods "in connection with monitoring and enforcement work in which the PGA has been engaged."

(*Id*. 1011 at 7-8).

---

impasse over whether the PGA is entitled to recover attorneys' fees and expenses for monitoring and enforcing activities since November, 2008…[t]he PGA is free to seek the courts permission to file a motion for the awarding of attorneys' fees." (Docket Entry No. 1007).

The State initially argued in their Response that "[s]ince 2004, both the law regarding the award of attorney fees and the facts supporting the finding that PGA is a prevailing party in this matter have changed. In light of current circumstances, an award of attorneys' fees to intervenor PGA for its claimed post-judgment work is not reasonable." (Docket Entry 1020 at 5). They, however, assert in their Surreply that (1) "[a]s noted by PGA, the Sixth Circuit has recognized that once a party has establish [*sic*] prevailing party status, fees may be available for post-judgment compliance monitoring and enforcement," citing *Hadix v. Johnson,* 143 F.3d 246, 256 (6th Cir. 1998),… and (2) the State "[has not] disputed that it previously agreed that PGA would be entitled to submit future requests for *reasonable* fees and expenses." (Docket Entry No. 1045 at 2). Rather, the State asserts that the issue in this matter is "whether PGA's current request for fees and expenses is *reasonable* in light of all circumstances…" (*Id.*).

Since the State has all but conceded its initial position as to PGA's prevailing party status, the Court will move to the reasonableness of PGA's attorney fees and expenses.

**B. Reasonableness of Attorneys' Fees and Costs**

The amount of attorneys' fees sought in PGA's application is $229,198.75. This amount is calculated by multiplying the numbers of hours worked on this case by Dudley M. West ("West") and Mary Martin Schaffner ("Schaffner") between November 13, 2008 and June 30, 2010, times the hourly rate of $275.00 per hour.[2] *See* (Docket Entry No. 1012, West Affidavit at ¶¶ 5, 6 and 9; Docket Entry No. 1013, Schaffner Affidavit at ¶¶ 5-7). PGA seeks a fee award for West's services in the amount of $76,848.75 for 279.45 hours incurred between November 13, 2008 and June 30, 2010, and further seeks a fee award for Schaffner's services in the amount of $152,350.00 for 554 hours expended between April 13, 2009 and June 30, 2010. (West Aff. at ¶ 9; Schaffner Aff. at ¶ 7). Additionally, PGA seeks out-of-pocket expenses incurred in the

---

[2] West's customary hour rate is $310.00 per hour. (West Aff. at ¶ 5).

amount of $159.62 during the period between November 13, 2008 and June 30, 2010. (West Aff. at ¶ 11).

The State contends the amount of fees and expenses sought by PGA are not reasonable. (Docket Entry No. 1020 at 5). It claims PGA's application for attorneys' fees and expenses includes hours that are excessive, redundant or otherwise not necessary. (*Id.* at 6). More specifically, "[t]hey are not *reasonable* in light of current circumstances, due to both the specific hours and activities claimed and the duplication of the role of People First [of Tennessee], as plaintiffs and class representatives." (Docket Entry No. 1045 at 3).

PGA, however, claims its fees are indeed reasonable, and the State has failed to carry its burden of showing the hours documented by PGA's attorneys are not reasonable. (Docket Entry No. 1035 at 9). It further asserts that "[a]lthough PGA and People First [of Tennessee] have often worked cooperatively to achieve their common goals, their efforts have not been the *same* and, therefore, have not been 'duplicative'." (Docket Entry No. 1053 at 3-4).

A determination of reasonableness begins with the "lodestar" method of calculation, *i.e.*, determining a reasonable fee based on a reasonable hourly rate and reasonable number of hours of service. The United States Supreme Court described the lodestar method in *Hensley v. Eckerhart*, 461 U.S. 424, 433, 76 L.Ed.2d 40, 103 S.Ct. 1933 (1983), as follows:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

A list of many of the factors to consider in establishing the lodestar fee and adjusting the fee was enunciated by the Fifth Circuit Court of Appeals in *Johnson v. Georgia Highway*

5

*Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). The Johnson factors have now become part of the settled law of lodestar analysis under both the United States Supreme Court and Sixth Circuit decisions. These factors include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n.4; *Blanchard v. Bergeron*, 489 U.S. 87, 92 n.5, 103 L.Ed.2d 67, 109 S.Ct. 939 (1989); *Reed v. Rhodes*, 179 F.3d 453 (6th Cir. 1999).

Based on a thorough review of the information and supporting documents before the Court, in conjunction with an analysis of the aforementioned lodestar factors, the Court finds that the total number of hours for West will be reduced by 20%, which results in a fee award of $61,479.00. Further, the total number of hours for Schaffner will be reduced by 25%, which results in a fee award of $114,262.50. Additionally, the Court finds that PGA shall be awarded West's out-of-pocket expenses in the amount of $159.62. Therefore, PGA shall be awarded $175,901.12 for reasonable attorneys' fees and costs associated with post-judgment monitoring and enforcement activities between November 13, 2008 and June 30, 2010.

Lastly, PGA requests that the Court require "the State to bear full financial responsibility for its bad faith and unreasonable delay in fulfilling its obligations as well as its meritless opposition to PGA's *entitlement* to fees." (Docket Entry No. 1035; also *see* Docket Entry No. 1011 at 16-17). The Court finds the State did not act in bad faith; rather, the State was diligently representing the interests of its clients. Consequently, there will be no upward adjustment of the fees in this matter.

## III. CONCLUSION

For all of the reasons stated, PGA's Application for Award of Attorneys' Fees and Reimbursement of Expenses is hereby GRANTED. PGA shall be awarded $175,901.12 for reasonable attorneys' fees and expenses for post-judgment monitoring and enforcement activities between November 13, 2008 and June 30, 2010.

An appropriate Order shall be entered.

*Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE